# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### PADUCAH DIVISION

GARY L. BLACKWELL, *AS TRUSTEE OF*                            PLAINTIFFS
*GARY BLACKWELL REVOCABLE LIVING*
*TRUST*, ET AL.

v.                                                    No. 5:22-cv-19-BJB

TENNESSEE VALLEY AUTHORITY, ET                              DEFENDANTS
AL.

* * * * *
### MEMORANDUM OPINION & ORDER

In 1933, Congress created the Tennessee Valley Authority to help control floods, improve navigation, develop the regional economy, and generate electricity throughout much of the southeastern United States. 16 U.S.C. § 831; *United States ex rel. TVA v. Welch*, 327 U.S. 546, 553 (1946). Congress gave TVA discretion over the development of the Tennessee River system, including construction projects big and small. 16 U.S.C. § 831y-1. One big example is the Kentucky Dam, near the confluence of the Tennessee and Ohio Rivers, which created Kentucky Lake, stretching 184 miles across the Kentucky-Tennessee border. TVA has also permitted much smaller projects, such as the private docks scattered across Kentucky Lake, some of which are at the center of this dispute.

TVA issued Gary and Carol Blackwell a permit to build one such dock on the shoreline near their home. Several years later, the Blackwells discovered two additional docks nearby. After some investigating, the Blackwells discovered that TVA issued permits to Michael and Cheryl Mott and William and Darda Work to build docks on the shoreline even though their lots were further from the shore than the Blackwells'. This upset the Blackwells. So they sued the Motts and Works in state court, alleging they had no legal interest in the land from which the docks extended. The state court ruled that TVA owned the land and was a necessary party, so the court dismissed the case.

Not to be deterred, the Blackwells sued TVA, the Motts, and the Works in this Court, alleging that TVA acted arbitrarily and capriciously by granting the dock permits because TVA regulations require the private permittees' land to be "immediately adjoining" TVA land. TVA moved to dismiss for lack of jurisdiction, arguing first that it has total discretion to grant permits, second that ownership of the land cannot be contested, and third that the permittees' land is adjoining TVA land. Because the land is adjoining TVA land and the permitting decision is otherwise within TVA's discretion, the Court grants TVA's motion.

1

## I.    Allegations

In 1939, the United States acquired approximately 229,000 acres of land to build Kentucky Dam and create the "Kentucky Reservoir" in order to control flooding, navigation, and produce electricity.  *See* The Kentucky Project, Technical Report No. 13 at 1 (TVA 1951) (DN 7-2).  Over time, TVA sold off some its land to private owners.  One such area, called the Sledd Creek Cabin Area, was subdivided into residential lots in 1959 and sold off throughout the '60s.  DN 7-6.  TVA continues to own the shoreline, however, including everything from a 375-foot contour elevation down into the Reservoir.  DN 1-1; DN 1-4.  In order to allow access to the Reservoir through TVA land, each lot included easement rights granting the "the right of ingress to and egress from the waters of Kentucky Lake over and upon the adjoining [TVA-owned] land lying between the 375-foot contour elevation and the waters of the lake."  DN 1-4 at 1; DN 1-5 at 1; DN 1-6 at 1; Complaint (DN 1) ¶¶ 17–19.  Each conveyance also included, as a real covenant running with the land, a prohibition on the construction or maintenance of any structure below the 381-foot contour elevation "except water-use facilities constructed in accordance with plans approved by [TVA]."  DN 1-4 at 2; DN 1-5 at 3; DN 1-6 at 3.

So the Motts acquired lot 30 (DN 1-2), the Blackwells acquired lot 33 (DN 1-1), and the Works acquired lot 31 (DN 1-3).  In the photo below, the Blackwells' lot is closest to the shore; the Buckingham lot (not involved in this case) is further from the shore; the Works' lot (marked as the Collins lot) is further still; and the Motts' lot is not visible but sits right below the Works' lot.  Abutting all the lots, toward the end of the inlet, is a swath of wooded land that TVA retained.  That TVA land juts inland from the shoreline—which TVA also owns—and is bisected by the pathway (marked in red) that runs from the Works' lot to the area where the docks are located.  The lot names on the exhibit, filed with a permit request, do not all match the current ownership.



**Works' 26a Permit (DN 1-8) at 6**

*Map showing the easement from the Works' lot through TVA land to the permitted dock*

Eventually, the Blackwells wanted to build a dock so they could access the lake from their lot. DN 7-7. But they needed a permit to construct anything on TVA land. Section 26a of the TVA Act requires TVA approval prior to the construction, operation, or maintenance of any obstruction affecting navigation, flood control, or public lands or reservations across, along, or in the Tennessee River or any of its tributaries. 16 U.S.C. § 831y-1.[1] TVA issued regulations to govern the permitting

---

[1] 16 U.S.C. § 831y-1 provides that:

The unified development and regulation of the Tennessee River system requires that no dam, appurtenant works, or other obstruction, affecting navigation, flood control, or public lands or reservations shall be constructed, and thereafter operated or maintained across, along, or in the said river or any

process for these obstructions, including docks.  18 C.F.R. § 1304.1.[2]  The Blackwells followed the process and applied for a permit.

TVA issued the Blackwells a permit that made clear that the "Land fronting your lot is TVA PUBLIC LAND" and that the permit to build a dock there "conveys no property rights, grants no exclusive license, and in no way restricts the general public's privilege of using shoreland owned by or subject to public access rights owned by TVA.  It is also subject to any existing rights of third parties."  Blackwells' 26a Permit (DN 7-7) at 2.  Several years later, the Motts and Works also sought permits for boat docks.  Compl. ¶¶ 20–21; Motts' 26a Permit; Works' 26a Permit.  TVA issued them permits to build docks just to the left of the Blackwells' dock.  Motts' 26a Permit at 7–8; Works' 26a Permit at 6–8.  But because their lots were further from the shoreline, TVA gave them easements for paths to the lake through the land to the left of their lots.  *Id.*  The images above and below display lines showing the paths going from the lots, through the adjoining TVA land, to the docks on the shore.

The Blackwells don't like that their neighbors' new docks "interfere[e] with their sight line of Kentucky Lake."  Compl. ¶ 27.  The Blackwells were never told about their neighbors' permits and believe that the docks intrude on their easement. ¶¶ 23–29.  They didn't appeal TVA's permitting decision.  *See* 18 C.F.R. § 1304.6. Instead, concerned about their property value and view, the Blackwells sued the Motts and Works in Marshall County Circuit Court, alleging that they had no right to build docks on the land.  ¶ 32.  The state court ruled that the docks were on TVA land and could "be equated to docks belonging to TVA," thus TVA was a necessary party.  State Court Order (DN 1-10) at 2–3.  The court also said the docks "cannot possibly violate the right" of the Blackwells' easement and noted that the Motts and Works have similar easements that do not require them to "take the shortest path to access the lake."  *Id.* at 3.  The court also noted that *all* the lots adjoined TVA land, even if the Blackwells were closer to the shore.  *Id.*  But because TVA was a required party, the court declined to make a "final determination" and partially dismissed the case for a lack of jurisdiction.  *Id.*; DN 1-12.  The Court of Appeals affirmed, ruling

of its tributaries until plans for such construction, operation, and maintenance shall have been submitted to and approved by the Board; and the construction, commencement of construction, operation, or maintenance of such structures without such approval is prohibited. When such plans shall have been approved, deviation therefrom either before or after completion of such structures is prohibited unless the modification of such plans has previously been submitted to and approved by the Board.

[2] The regulation provides that "TVA's approval [must] be obtained prior to the construction, operation, or maintenance of any dam, appurtenant works, or other obstruction affecting navigation, flood control, or public lands or reservations along or in the Tennessee River or any of its tributaries."  18 C.F.R. § 1304.1.  It further specifies, "[b]y way of example only," that "such obstructions may include boat docks…."  *Id.*

that the land was owned by TVA and the state courts lacked jurisdiction to resolve the dispute.  DN 1-13 at 8–9.

Undaunted, the Blackwells filed another lawsuit here, alleging that TVA acted arbitrarily and capriciously by issuing permits to the Motts and Works because their lots don't adjoin TVA land as required by TVA regulations.  Compl. ¶¶ 40–48.  TVA moved to dismiss for lack of jurisdiction, arguing the statute gives the agency complete and unreviewable discretion over permits.  Motion to Dismiss (DN 7-1) at 10.  TVA also argues that the Blackwells cannot challenge its ownership of the land.  *Id.* at 14.  The Blackwells contend that TVA regulations require the permittees' lands to adjoin TVA land, which the Motts and Works don't, and that issue is reviewable.  Blackwells' Response (DN 9) at 6–7.  The Blackwells also specify that they are not questioning ownership of the land—just TVA's decision to permit the docks under its own regulations.  *Id.* at 11.  TVA replies that the regulations still give it total discretion, and in any event the permittees' lands do in fact adjoin TVA land.  Reply (DN 10) at 7–11.

## II.    Standard of review

A motion to dismiss for lack of jurisdiction can "challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)."  *Cartwright v. Garner*, 751 F.3d 752, 759–60 (6th Cir. 2014).  A facial challenge is reviewed for plausibility and the court takes the allegations of the complaint as true.  *Id.*  The same standard applies to a motion to dismiss on jurisdictional grounds under Rule 12(b)(1), when that motion is "more accurately considered a Rule 12(b)(6) motion to dismiss."  *Lindenbaum v. Realgy, LLC*, 13 F.4th 524, 527 (6th Cir. 2021).[3]

---

[3] Although often phrased in terms of jurisdiction, judicial review under the APA is better conceptualized as a merits question.  *See Builders Bank v. Fed. Deposit Ins. Corp.*, 846 F.3d 272, 274–75 (7th Cir. 2017).  So an argument that agency action is unreviewable should be treated as a merits question under Rule 12(b)(6), rather than a jurisdictional issue under Rule 12(b)(1).  But that doesn't matter here because the standard is the same in this context.  *See Lindenbaum*, 13 F.4th at 527.  Judicial opinions, however, have not spoken in unison on this point.  *See Barrios Garcia v. United States Dep't of Homeland Sec.*, 25 F.4th 430, 439 (6th Cir. 2022) (noting the frequent and casual nature with which courts refer to such challenges as jurisdictional); *see generally Arbaugh v. Y&H Corp.*, 546 U.S. 500, 510 (2006) (Ginsburg, J.) (regretting that "jurisdiction" had become a word of "many, too many, meanings") (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 90 (1998) (Scalia, J.)) (quoting *United States v. Vanness,* 85 F.3d 661, 663 n. 2 (D.C. Cir. 1996) (Randolph, J.)).  In fact, until recently the Sixth Circuit referred to questions of agency review as jurisdictional.  *Compare Barrios Garcia*, 25 F.4th at 439 *with Sheldon v. Vilsack*, 538 F. App'x 644, 650 (6th Cir. 2013).

A factual challenge to jurisdiction, however, allows a court to review and weigh evidence. *Cartwright*, 751 F.3d at 759–60. While the parties raise some factual issues here, the dispositive issues are all legal. So the challenge is facial and the plausibility standard should apply. *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 & n.1 (10th Cir. 2010). Still, "documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Commercial Money Center, Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007); *Napper v. Hankinson*, No. 3:20-cv-764, 2022 WL 3008809, at *5 (W.D. Ky. July 28, 2022). And courts may take judicial notice of public records, orders, and reliable government documents. *See* 5A WRIGHT & MILLER, FED. PRACTICE AND PROCEDURE § 1357 (2d ed. 1990); *Mitchell v. TVA*, No. 3:14-cv-360, 2015 WL 1962203, at *4 & n.2 (E.D. Tenn. Apr. 30, 2015) (taking judicial notice of TVA's website); *Dicken v. Wells Fargo Bank, N.A.*, No. 3:21-cv-257, 2022 WL 854847, at *2 (W.D. Ky. Mar. 22, 2022) ("Court may take judicial notice of public documents and government documents"). "When a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012) (quotation omitted); *Castleman v. TVA*, No. 4:06-cv-17, 2006 WL 2136414, at *4 n.2 (E.D. Tenn. July 28, 2006) (court may take judicial notice of filed deeds and other public records without converting into summary judgment).

## III.   The TVA Act and implementing regulation give TVA unreviewable permitting discretion

The Blackwells challenge TVA's permits under the Administrative Procedure Act, which TVA says precludes judicial review. The APA allows a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute," to seek "judicial review" of the agency's actions. 5 U.S.C. § 702. Generally, agency action is presumed to be reviewable. *Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967). That presumption may be overcome if "statutes preclude judicial review" or "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(1)–(2). If "a court would have no meaningful standard against which to judge the agency's exercise of discretion"—in other words, if a court would be left with "no law to apply"—then the agency's action is discretionary and unreviewable. *Heckler v. Chaney*, 470 U.S. 821, 830 (1985).

No statute expressly precludes judicial review here. TVA points to Section 26a, MTD at 10, which says "no dam, appurtenant works, or other obstruction, affecting navigation, flood control, or public lands or reservations shall be constructed … until plans for such construction, operation, and maintenance shall have been submitted to and approved by the Board," 16 U.S.C. § 831y-1. This language grants TVA broad

authority to approve or reject projects on the river system, and bars anyone from undertaking a project without TVA approval.  It also authorizes courts to enjoin any "construction, operation, or maintenance" that lacks TVA approval.  *Id.* Otherwise it doesn't say anything about judicial review.

Yet the statute may implicitly preclude review because no standard appears to guide TVA's approval or rejection of such projects.  *See generally Heckler*, 470 U.S. at 830.  The only limitation of TVA authority found in § 26a speaks to timing, not substance: the requirement of obtaining TVA approval "shall be deemed satisfied" if TVA doesn't rule on a plan "within sixty days" and the Secretary of the Army approves it.  16 U.S.C. § 831y-1.  That provision is not at issue here, and it is hard to find any other language in the statute that would supply a court with a basis to assess TVA's decision to grant a permit.  Although not perfectly on point, several courts have ruled that similar permitting and enforcement decisions by TVA are purely discretionary.[4] Although the Blackwells attempt to distinguish many of these cases, they do not identify any legal standard in the TVA Act against which a court could measure TVA's permitting decision with respect to the Works' and Motts' lots.  *See* Response at 8–11.

Instead, the Blackwells focus on the language of a TVA implementing regulation.  *Id.* at 6–7.  It speaks to the requirements placed on an applicant seeking TVA permission for a project: "If the facility is to be built on TVA land, the *applicant must*, in addition to the other requirements of this part, *own* the fee interest in …

---

[4] *See Brown v. TVA*, 514 F. App'x 865, 869 (11th Cir. 2013) (no standing to challenge TVA statements made during hearing because TVA cannot be liable given "that TVA's discretionary decisions and functions, like the administration of a permitting program, are not subject to judicial review" such as rendering "an official permitting decision, which would not be subject to judicial review."); *Gold Point Marina, Inc. v. TVA*, 635 F. Supp. 39, 43 (E.D. Tenn. 1986) ("[T]his broad grant of power" in the TVA Act "is a clear indication of the congressional intent to preclude judicial review of TVA's actions relating to property it has an interest in under circumstances such as" TVA's imposition of restrictive covenants in transferring property.); *TVA v. Jones*, No. 1:14-cv-356, 2016 WL 7799315, at *5 (E.D. Tenn. Mar. 22, 2016) (the "virtually limitless discretion this affords TVA" regarding easements means "courts faced with challenges to TVA decisions regarding land use have consistently held that these decisions are committed to agency discretion such that they are not amenable to judicial review under the APA"); *Gast v. TVA*, No. 4:10-cv-45, 2011 WL 864390, at *8–9 (E.D. Tenn. Mar. 10, 2011) (because TVA has broad discretion in permitting docks, court couldn't review TVA's refusal to enforce its prohibition against building docks without a permit); *Alabama-Tennessee Forest Resources Ltd. P'ship v. TVA*, CV 93-N-2713-NE, Mem. Op. at 17, 21 (N.D. Ala. Mar. 30, 1995) (DN 7-8) ("§ 26a gives TVA unlimited discretion to grant or deny a permit"); *cf. United States v. Alaska*, 503 U.S. 569, 576 (1992) (holding that analogous language in Section 10 of the Rivers and Harbors Act "appears to give the Secretary [of the Army] unlimited discretion to grant or deny a permit for construction of a structure such as the one at issue in this case").

*land immediately adjoining the TVA land*."  18 C.F.R. § 1304.2(a) (emphasis added).
Other parts of the regulation are expressly discretionary, the Blackwells note, but
this "adjacent-land" requirement is not.  According to TVA, however, this provision
doesn't trigger judicial review but "merely serve[s] as the procedural mechanism by
which TVA has elected to implement its discretionary" permitting authority.  Reply
at 3.

To the extent TVA argues its own "procedural" standards cannot bind the
agency in a manner enforceable by judicial review, it is incorrect.  Such regulatory
standards can and often do help courts determine whether the agency acted
arbitrarily or capriciously: "When an agency does not comply with its own
regulations, it acts arbitrarily and capriciously."  *New Mexico Farm & Livestock
Bureau v. United States Dep't of Interior*, 952 F.3d 1216, 1231 (10th Cir. 2020); *see
also United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265–68 (1954); *Nat'l
Envtl. Dev. Assoc.'s Clean Air Project v. EPA*, 752 F.3d 999, 1009 (D.C. Cir. 2014)
("[A]n agency action may be set aside as arbitrary and capricious if the agency fails
to comply with its own regulations.") (quotation omitted).  "Under deeply rooted
principles of administrative law, not to mention common sense, government agencies
are generally required to follow their own regulations."  *Fed. Defs. of New York, Inc.
v. Fed. Bureau of Prisons*, 954 F.3d 118, 130 (2d Cir. 2020).[5]

Agencies may thus commit themselves to certain standards or even to take
certain actions by promulgating regulations that implement broad statutory
authority.  Particularly given the presumption in favor of judicial review, these
agency-supplied standards may overcome indications that its "action is committed to

---

[5] Not everyone agrees that the APA *obviously* supplies a cause of action "independent of
any other right to sue agencies for violations of a statute." *Fed. Defenders*, 954 F.3d at 130.
A "survey of D.C. Circuit cases reveals uncertainty about whether [these so-called] *Accardi*
claims can render judicially reviewable what otherwise would be unreviewable." Thomas W.
Merrill, *The* Accardi *Principle*, 74 GEO. WASH. L. REV. 569, 605 (2006).  And as the Sixth
Circuit recently acknowledged, if a statute grants an agency unreviewable discretion, the
language of § 701(a)(2) doesn't fit cleanly with judicial review based on the agency's exercise
of its otherwise unreviewable discretion.  "Taken literally, § 701(a)(2) conveys that the
federal courts can never review any agency exercise of discretion." *Barrios Garcia*, 25 F.4th
at 445.  The Sixth Circuit and others have grounded the so-called *Accardi* principle in
agencies' obligation to not to act in a manner that is arbitrary, capricious, an abuse of
discretion, or not in accordance with law under 5 U.S.C. § 706(a)(2)(A). *Id.*; *see also United
States v. Caceres*, 440 U.S. 741, 753-54 (1979) (similar). At least one thoughtful scholar,
however, has noted that this approach assumes that legislative rules promulgated by
agencies are "law" within the meaning of the APA and carry the power to bind the agency in
a manner Congress did not.  Merrill, *The* Accardi *Principle*, 74 GEO. WASH. L. REV. at 569
("To say that the *Accardi* principle is poorly theorized would be an understatement."). 
However obscure the doctrine's origins and relationship with § 701(a)(2), the decisions
applying it obviously bind this Court.

agency discretion by law." § 701(a)(2). The Sixth Circuit, for example, recently held that judicial review was available because an agency's "own regulations state[d] that" the challenged action "is nondiscretionary," such that there was "no 'agency action … committed to agency discretion by law.'" *Barrios Garcia*, 25 F.4th at 446 (quoting 5 U.S.C. § 701(a)(2)) (cleaned up). Other thoughtful judges have recognized the same principle, albeit reaching different conclusions in its application. *See, e.g., Gonzalez v. Cuccinelli*, 985 F.3d 357, 374 n.10 (4th Cir. 2021) (by promulgating implementing regulations and despite broad statutory discretion, DHS committed itself to adjudicate some but not all of the visa-related requests addressed in *Barrios Garcia*).

So an agency *can* regulate its way into court. But has it here? The minor premise of the Blackwells' argument is that the regulation provides an adequate standard to judge TVA's actions: a requirement that the applicant's land must adjoin TVA land. Response at 6–7. Unlike other parts of the regulation, which are expressly discretionary, the Blackwells believe this aspect supplies judges with an answerable question. *Id.*

But TVA is right that this regulation, read in the light of the broad permitting statute it implements—doesn't require the agency to do anything that a court could meaningfully review. Instead, it requires the *applicant* to meet specified requirements, and affords the *agency* discretion over whether to grant or deny a permit based on the requested information. Reply at 8–9. TVA doesn't have to issue a permit just because an applicant submits an application that complies with § 1304.2; nor does TVA (as the Blackwells assume) have to *deny* a permit that doesn't comply. *Cf. Gonzalez*, 985 F.3d at 369 n.8. However unattractive and one-sided that may appear to the Blackwells, they don't point to anything rendering unlawful TVA's exercise of the permitting authority Congress gave it in the TVA Act. Compared to other contexts, unreviewable discretion makes more sense in situations like this, where TVA is deciding whether to issue permits for the use of land it controls. *See* n.4 above (collecting cases).

Indeed, TVA's discretion is evident in several parts of the regulation. That section, titled "Application," speaks to the applicant, not the agency.[6] It addresses

---

[6] The text of § 1304.2, in pertinent part, says:

(a) If the facility is to be built on TVA land, the applicant must, in addition to the other requirements of this part, own the fee interest in or have an adequate leasehold or easement interest of sufficient tenure to cover the normal useful life of the proposed facility in land immediately adjoining the TVA land. If the facility is to be built on private land, the applicant must own the fee interest in the land or have an adequate leasehold or easement interest in the property where the facility will be located. The applicant is responsible for locating the proposed facility on qualifying land and ensuring that there is no objection from any owner of such land. TVA may require the applicant to provide

facilities built on both TVA and private land.  In either case the "*applicant must*" own the land adjoining TVA land or be "*responsible for* locating the proposed facility on qualifying land" in order to get a permit.  18 C.F.R. § 1304.2(a).   "TVA is *not responsible for* resolving ownership questions," though it "*may* require the applicant to provide appropriate verification of ownership and lack of objection" in some circumstances.  *Id.* (all emphases added).   The word "may," of course, connotes discretion.  *See, e.g., Opati v. Republic of Sudan*, 140 S. Ct. 1601, 1609 (2020).  And the regulation also expressly invokes TVA's permitting discretion: "TVA may exercise its discretion to permit a facility on TVA land that is located up or downstream from the land which makes the applicant eligible for consideration to receive a permit."  18 C.F.R. § 1304.2(a).  So while the applicant is legally required to ensure its land qualifies for a TVA-approved facility, TVA is not required to ensure the applicant's compliance.  The regulation gives TVA the discretion, not the obligation, to require proof of ownership.

This distinction between the applicant's mandates and TVA's discretion whether and when to grant a permit is evident from reviewing neighboring subsections of the same regulation, which contain language that is sometimes mandatory and sometimes discretionary.  In places the language is mandatory for applicants and TVA alike: in subsection (c), for example, the applicant "*must* submit certain required information depending upon whether a proposed facility is a minor or major facility" and the "TVA *shall determine* whether a proposed facility is minor or major" based on criteria such as "a request for a variance to the size limitations for a residential-related facility, which "*shall* be regarded as an application for a major facility."  18 C.F.R. § 1304.2(c) (emphasis added).  Elsewhere the regulation speaks in discretionary terms: TVA "*may require* the applicant to provide such other information as TVA deems necessary for adequate review of a particular application." *Id.* (emphasis added).  So unlike issues with the location and ownership of the land,

---

appropriate verification of ownership and lack of objection, but TVA is not responsible for resolving ownership questions. In case of a dispute, TVA may require private parties requesting TVA action to grant or revoke a TVA permit to obtain a court order declaring respective ownership and/or land rights. A TVA permit conveys no property interest. The applicant is responsible for locating the proposed facility on qualifying land and ensuring that there is no objection from any owner of such land. TVA may require the applicant to provide appropriate verification of ownership and lack of objection, but TVA is not responsible for resolving ownership questions. In case of a dispute, TVA may require private parties requesting TVA action to grant or revoke a TVA permit to obtain a court order declaring respective ownership and/or land rights.  TVA may exercise its discretion to permit a facility on TVA land that is located up or downstream from the land which makes the applicant eligible for consideration to receive a permit.

for which only the applicant has set requirements, the determination of a "major or minor facility" requires TVA to make a decision and consider certain information. *Id.* And in both contexts, TVA has discretion to review additional information. The responsibility to ensure the ownership and location of an applicant's land lies with the applicant, not TVA.[7]

In the absence of a "meaningful standard" in either the statute or relevant regulations, and given the broad discretion Congress granted TVA over permitting decisions on TVA land, this Court lacks authority to review TVA's "action … committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *Heckler*, 470 U.S. at 830.

## IV.   TVA complied with the relevant regulations

Even if TVA were bound by the "immediately adjoining" requirement, that requirement is met here. The parties don't dispute that TVA owns the shoreline below the 375-foot contour elevation where the docks are. Response at 11. The deeds attached to the complaint also show that all the lots have similar easements allowing travel across TVA land to the lake. DN 1-4 at 1; DN 1-5 at 1; DN 1-6 at 1; Compl. ¶¶ 17–19. At its core, the Blackwells' argument is that only their lot is "immediately adjoining" TVA's shoreland where the docks are affixed, while the Motts' and Works' lots are "landlocked" and require a "commute" to the docks on TVA land. Response at 4. So the Blackwells contend that whether the Motts' and Works' lots adjoin TVA land, and whether they infringe the Blackwells' easement rights, are questions of fact that should be resolved later in this litigation. *Id.*

Both parties agree that "adjoining" means "[t]ouching; sharing a common boundary." *Id.* (quoting BLACK'S LAW DICTIONARY 42 (7th ed. 1999)); Reply at 11 (adopting this definition). This definition, and the documents attached to the complaint, make plain that the Motts' and Works' lots are "immediately adjoining the TVA land." 18 C.F.R. § 1304.2(a); *Commercial Money Center, Inc.*, 508 F.3d at 335 (attached documents may be considered).

Looking at the permit maps attached to the complaint (as seen above and below) the Motts' and Works' lots obviously touch and "shar[e] a common boundary" with the TVA land that juts inland from the shore and runs without interruption to and past the spot where the docks are located. Motts' 26a Permit at 7; Works' 26a

---

[7] TVA also argues that its interpretation of the regulation should receive deference. Reply at 10–11 (citing *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945), and *Auer v. Robbins*, 519 U.S. 452 (1997)). Because "standard tools of interpretation" resolve the issue, the Court needn't defer. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2414 (2019).

Permit at 6.[8]  That TVA land, to the left of the Motts' and Works' lots as the aerial photos present them, stretches inland past the 375-contour line into a forested area. *Id.*  So the lots all adjoin TVA land, which includes the shoreline where the docks are. MTD at 6–8; Reply at 3–4, 8–9.  Nothing in the regulation says that the adjoining land must be a certain distance from the shore or that any easement must be short. Nor does it matter that "neither lot touches the TVA land *where the Motts and Works installed docks*."  Resp. at 4.  The emphasized language is an embroidery offered by the Blackwells; the text of the regulation itself refers only to "TVA land" and "land immediately adjoining the TVA land."  § 1304.2(a).  That describes the site of the docks and the Motts and Works lots, respectively.  In fact, as noted above, the regulation says TVA may "permit a facility on TVA land that is located *up or downstream from the land which makes the applicant eligible* for consideration to receive a permit."  18 C.F.R. § 1304.2(a) (emphasis added).  This permitting discretion is not limited, as the Blackwells suggest, to structures that would cause "some interference with navigation."  Resp. at 7.  So as long as the lots do in fact adjoin TVA land, TVA has discretion to approve the construction of a facility at a spot other than where the lots adjoin.  The relative distance from the shore is of no moment.

As TVA points out, moreover, the argument that the Motts' and Works' lots are "landlocked" is hypocritical, given that Blackwells' lot is also technically landlocked: TVA owns the shore.  Reply at 9.  That of course didn't stop the Blackwells from successfully applying for and receiving a dock permit.  Given TVA's ownership, it's strange to think of one inland lot as more landlocked than another; they're all landlocked.  The Blackwells' argument that the new "dock sites impede on the rights of ingress and egress granted specifically to the Blackwells" doesn't work, either. Resp. at 4–5.  This is an APA suit, not a lawsuit for interference with a property right (which the permits expressly do not create).  And nothing in the regulations or deeds renders the Blackwells' shore access "exclusive," Resp. at 11, or otherwise speaks to the "commute" the Works and Motts may or must take in order to reach their docks, *id.* at 4.  Like the Blackwells, they have easements *over TVA land* to reach the water. DN 1-4 at 1; DN 1-5 at 1; DN 1-6 at 1; Compl. ¶¶ 17–19.  And Congress gave TVA authority to permit an easement that crosses even a long distance across its land.  *See Jones*, 2016 WL 7799315, at *5 (TVA has "virtually limitless discretion" under 40

---

[8] The Blackwells note that they don't necessarily accept the lines drawn in the maps shown above, as they do not know exactly where their property meets the 375-contour line. Response at 2 n.1.  But they dispute only the location of the boundary, not the legally significant point that the lots in question abut the TVA land contiguous to the shoreline, as shown on the maps.  *Id.* at 11.  Relatedly, this leaves no reason to resolve TVA's argument that any challenge to its ownership must be brought under the Quiet Title Act, for which the statute of limitations has run.  MTD at 14–17.

U.S.C. § 1314(b) to grant easements).  That TVA gave other parties easements to access the water via TVA land doesn't by itself interfere with the Blackwells' own and equal easement—even if it unfortunately interferes with their view of the beautiful lake that TVA built.



**Motts' 26a Permit (DN 1-7) at 7**

*Map showing the easement from the Motts' lot through TVA land to the permitted dock*

The state-court decisions buttress this conclusion.  The Marshall Circuit Court dismissed the Blackwells' case because TVA owned the land in question but wasn't a party to the suit.  State Court Order at 2–3; DN 1-13 at 8–9 (affirming).  The court's opinion went on to note that it didn't think the Blackwell's easement was violated for the further reason that "the limited size of a dock cannot possibly violate the right of ingress to and egress from the lake," and because all the deeds contained the same easement rights and lacked any restriction on the path's length.  State Court Order at 3.[9]

---

[9] Under Kentucky law, the decisions of state courts receive preclusive effect if "(1) at least one party to be bound in the second case [was] a party in the first case; (2) the issue in the second case [was] the same as the issue in the first case; (3) the issue [was] actually litigated; (4) the issue was actually decided in that action; and (5) the decision on the issue in the prior

The court touched on the regulatory arguments at issue here, rejecting the argument that because the Motts' and Works' lots "do not adjoin TVA land … directly adjacent to the docks," they violate the regulation. *Id.* While the court acknowledged that the Blackwells' lot is "closer in proximity to the location of the docks," it found that the other lots did adjoin TVA land. *Id.* And it noted that a related regulation regarding docks says the "TVA may 'require an applicant's dock, pier, or boathouse to be located on an area of TVA shoreline *not directly fronting the applicant's property*.'" 18 C.F.R. § 1304.204 (emphasis added). That regulation authorizes TVA to permit docks fairly far from where the applicant's land adjoins TVA land.

The state court's reasoning is persuasive. All the lots adjoin TVA land leading to the shore. All the deeds include easements to the lake. And TVA has discretion to permit or situate the dock away from the applicant's adjoining land. So the permit that the Motts and Works successfully applied for didn't' violate TVA's regulations— even assuming they're judicially enforceable—by permitting the Motts and Works to construct docks on its land nor did anyone violate the Blackwells' easement rights.

## V.  Conclusion

The Court grants TVA's Motion to Dismiss (DN 7) and orders the remaining Defendants to file any appropriate submission or motion within 30 days.

Benjamin Beaton, District Judge
United States District Court

August 18, 2022

---

action [was] necessary to the court's judgment and adverse to the party to be bound." *Miller v. Admin. Off. of Cts.*, 361 S.W.3d 867, 872 (Ky. 2011) (quotation omitted); *Appalachian Reg'l Healthcare, Inc. v. U.S. Nursing Corp.*, 824 F. App'x 360, 366 (6th Cir. 2020) (giving Kentucky state-court judgment same preclusive effect it would have under state law). This would apply to the state court's determination that the docks are on TVA land, but not to the other issues since they were not "actually decided." State Court Order at 3 (declining to decide these issues). The state court's statements are certainly persuasive, regardless of whether they're binding.